IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-02721-MEH

RELAXIMALS, INC.,

    Plaintiff,

v.

BRENTWOOD ORIGINALS, INC.,

    Defendant.

---

**ORDER**

---

Before me is Defendant's Motion to Dismiss for Lack of Jurisdiction or Venue Change. ECF 20. For the following reasons, I will deny the motion.

## BACKGROUND

### I. Procedural History

Plaintiff initiated this action on September 24, 2019, alleging one count of copyright infringement. Defendant filed a motion to dismiss on November 25, 2019, arguing a lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) and improper venue under 28 U.S.C. § 1400(a). In response, Plaintiff filed its First Amended Complaint ("FAC") on December 16, 2019. ECF 15. Defendant filed this renewed motion to dismiss on January 13, 2020, which is now fully briefed. I find that this matter may be decided on the briefs, and that an evidentiary hearing would not substantially assist me in determining personal jurisdiction.

## II. Statement of Facts

The following are factual allegations made by Plaintiff in its FAC for jurisdictional analysis.[1]

1. Two brothers and a friend created Relaximals, a "collection of . . . plush play pillows – eight animal inspired pillows." Am. Compl. ¶ 5, ECF 15 at 3. Plaintiff refers to these eight pillows as "the Copyrighted Collection" and attaches pictures of each to the FAC.

2. Plaintiff was formed in 2015 to commercialize the play pillows.

3. Plaintiff filed for and obtained United States Copyright Registration No. VAu 1-229-835 for the Copyrighted Collection effective September 21, 2015.

4. The Copyrighted Collection is sold throughout the United States via the Plaintiff's own website and "e-tailers," online retailers. The Copyrighted Collection is advertised through promotional videos on YouTube.com and video advertisements on Facebook.com and local broadcast television.

5. Plaintiff has not authorized Defendant to sell or distribute the Copyrighted Collection.

6. Defendant is a manufacturer and distributor of home furnishings such as decorative pillows, outdoor cushions, and many other similar products. Defendant distributes its products through online sites such as Amazon.com and Overstock.com (direct to consumer sales), wholesale sales to print and mail catalog retailers such as Fresh Finds, and wholesale sales to brick and

---

[1] "When . . . a district court grants a motion to dismiss for lack of personal jurisdiction without conducting an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion." *Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1295 (10th Cir. 2017). In the present case, neither party sought jurisdictional discovery or an evidentiary hearing. Defendant did submit an affidavit which establishes that it has no physical presence (nor business registration) in Colorado and does no business here in any manner other than that outlined herein, facts that Plaintiff does not dispute.

mortar retailers, including TJ Maxx, Marshalls, Ross, and HomeGoods. Colorado has approximately thirty-six such stores.

7. Defendant caused to be manufactured, distributed, and sold "cat, frog, owl, and panda animal play pillows" that Plaintiff alleges are substantially similar to the cat, frog, owl, and panda pillows in the Copyrighted Collection. Plaintiff terms Defendant's pillows as "Infringing Works." Plaintiff also alleges Defendant created the Infringing Works by intentionally copying the Copyrighted Collection without Plaintiff's consent. The Infringing Works were first offered for sale on Amazon.com around November 2016.

8. The only allegations relating to sales are that they are accomplished as stated in Paragraph 6, *supra*. There is no allegation that Defendant operates an interactive website of its own, on which purchases or inquiries could be made; however, in its Response, Plaintiff does contend that Defendant has a "storefront" on Amazon.com that is interactive with the consumer. Residents of Colorado could purchase the Infringing Works by any of the means in Paragraph 6, *supra.*

9. In March 2018, Plaintiff conducted a search on Amazon.com using the keyword "Relaximals." "The search yielded sponsored advertisements for Defendant's Infringing Works," Am. Compl. ¶ 22, leading Plaintiff to allege that "Defendant actively and intentionally advertised the Infringing Works on Amazon.com by paying the retail giant Amazon.com to list its Infringing Works as Sponsored Products when a consumer searched Amazon.com for 'Relaximals,'" *id.* ¶ 23.

10. On June 1, 2018, Plaintiff's counsel sent a cease and desist letter to Defendant concerning the Infringing Works. On July 3, 2018, Defendant's counsel responded but did not agree to discontinue the manufacture, distribution, and sale of the Infringing Works. Allegedly, Defendant continues to sell the Infringing Works to date.

# LEGAL STANDARDS

## I. Dismissal under Fed. R. Civ. P. 12(b)(2)

As noted above, because I did not conduct an evidentiary hearing, Plaintiff need only make a prima facie showing of jurisdiction. *Soma Med. Int'l*, 196 F.3d at 1295. "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *OMI Holdings, Inc. v. Royal Ins. Co.*, 149 F.3d 1086, 1091 (10th Cir. 1998).

> The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits. If the parties present conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party. However, only the well pled facts of plaintiff's complaint, as distinguished from mere conclusory allegations, must be accepted as true.

*Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995) (citations and internal quotation marks omitted). "[T]o defeat a plaintiff's prima facie showing of jurisdiction, a defendant must present a compelling case demonstrating that the presence of some other considerations would render jurisdiction unreasonable." *OMI Holdings, Inc.*, 149 F.3d at 1091 (citation and internal quotations omitted).

"Jurisdiction to resolve cases on the merits requires . . . authority over the parties (personal jurisdiction), so that the court's decision will bind them." *Gadlin v. Sybron Int'l Corp.*, 222 F.3d 797, 799 (10th Cir. 2000) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999)). In a federal question case, the federal court must determine "(1) 'whether the applicable statute potentially confers jurisdiction' by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process.'" *Peay v. Bellsouth Med. Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir. 2000) (citation omitted). As there is no federal statute authorizing

nationwide personal jurisdiction in this case, Fed. R. Civ. P. 4(k)(1)(A) refers to the Colorado long-arm statute. *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017). In Colorado, only one inquiry is necessary, as the Colorado long-arm statute, Colo. Rev. Stat. § 13-1-124(1), "confer[s] the maximum jurisdiction permitted by the due process clauses of the United States and Colorado constitutions," and its requirements are necessarily addressed under a due process analysis. *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193 (Colo. 2005).

## II. Venue under 28 U.S.C. § 1400(a)

A claim under the Copyright Act is governed by the venue provisions of 28 U.S.C. § 1400(a): "Civil actions, suits, or proceedings arising under any Act of Congress relating to copyrights or exclusive rights in mask works or designs may be instituted in the district in which the defendant or his agent resides or may be found." If I find that Defendant is subject to personal jurisdiction in Colorado, this is also a proper venue for the action. *AF Holdings, LLC v. Does 1-1058*, 752 F.3d 990, 996 (D.C. Cir. 2014); *Milwaukee Concrete Studios, Ltd. v. Fjeld Mfg Co.*, 8 F.3d 441, 445 (7th Cir. 1993). As Senior Judge Robert E. Blackburn noted in *Allison v. Wise*, 621 F. Supp. 2d 1114, 1118 (D. Colo. 2007): "'A defendant "may be found" in any judicial district to which he would be subject to personal jurisdiction.' *See Health Grades, Inc. v. Decatur Mem'l Hosp.*, 190 F. App'x 586, 587–88 (10th Cir. 2006); *Triple A P'ship v. MPL Commc'ns, Inc.*, 629 F. Supp. 1520, 1522 (D. Kan. 1986). Thus, for present purposes, the personal jurisdiction and venue issues are essentially identical. *Hudye Soil Services, Inc. v. Tyler*, 46 F. Supp. 2d 1157, 1161 (D. Kan. 1999)."

## **ANALYSIS**

Defendant contends that the contacts alleged by Plaintiff do not support personal jurisdiction in Colorado. Defendant submits an affidavit outlining its lack of contacts in Colorado,

but I do not believe it is necessary to consult that submission, because the facts contained therein do not materially deviate from the allegations in the FAC. Plaintiff does not rely on any actual "presence" of Defendant in Colorado, but rather on the activity described in the Statement of Facts, *supra*. Further, Plaintiff does not assert general personal jurisdiction over Defendant. Therefore, this analysis addresses specific personal jurisdiction.

**I.     Due Process**

When evaluating specific personal jurisdiction under the Due Process Clause, the Tenth Circuit conducts a two-step analysis. At the first "due process" step, a court examines "whether the non-resident defendant has 'minimum contacts' with the forum state such 'that he should reasonably anticipate being haled into court there.'" *TH Agric. & Nutrition, LLC v. Ace European Grp. Ltd.,* 488 F.3d 1282, 1287 (10th Cir. 2007) (citations omitted). These minimum contacts must be purposeful. *Old Republic Ins. Co.*, 877 F.3d at 903 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)).

For the second step, a court determines whether "exercise of jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice,'" that is, whether the exercise of jurisdiction is "reasonable" under the circumstances of a given case. *TH Agric. & Nutrition, LLC*, 488 F.3d at 1287 (citations omitted). "This analysis is fact specific." *ClearOne Commc'ns., Inc. v. Bowers*, 643 F.3d 735, 763 (10th Cir. 2011) (quoting *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1159 (10th Cir. 2010)). In assessing reasonableness, a court considers: (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Id.* at 764.

## II.     Minimum Contacts/Purposeful Availment

### A.     Legal Standards

In order to assert personal jurisdiction over Defendant, it must have purposefully availed itself of the forum, in a manner that is connected to the facts of the case. "Under the specific-jurisdiction requirement, a plaintiff satisfies the minimum-contacts standard by showing that (1) the defendant has purposefully availed itself of the privilege of conducting activities or consummating a transaction in the forum state, and (2) the litigation results from the alleged injuries that arise out of or relate to those activities." *Emp'rs Mut. Cas. Co..*, 618 F.3d at 1160. "Specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011). In *Walden v. Fiore*, 571 U.S. 277 (2014), the Supreme Court re-articulated the criteria for establishing specific jurisdiction: "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'" *Id.* at 283-84 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)). The "defendant's suit-related conduct must create a substantial connection with the forum state," and "the relationship must arise out of contacts that the defendant *himself* creates with the forum State" . . . with the "minimum contacts analysis look[ing] to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* at 284 (citing *Burger King*, 471 U.S. at 475 and *Int'l Shoe Co. v. State of Wash.*, 326 U.S. 310, 319 (1945)) (emphasis in original). The "plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connections with the forum State" to support the basis for specific jurisdiction. *Id.* at 285-86 (citing *Burger King*, 471 U.S. at 478); *see also Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946

F.3d 1223, 1231 (10th Cir. 2020) ("[A] defendant's interaction with a plaintiff—even when allegedly tortious—is insufficient to establish personal jurisdiction.").

For the purposeful availment (or purposeful direction) requirement to be met, there must be some conduct that is particular to the forum. In *Calder v. Jones*, 465 U.S. 783 (1984), the Supreme Court concluded that the defendant's "intentional, and allegedly tortious, actions were expressly aimed at California." *Id.* at 789. The Tenth Circuit, in *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063 (10th Cir. 2008), interpreted *Calder* to provide a means of demonstrating purposeful direction through "(a) an intentional action . . . that was (b) expressly aimed at the forum state . . . with (c) knowledge that the brunt of the injury would be felt in the forum state." *Id.* at 1072. The court also noted, "we do not imagine that *Calder* necessarily describes the ***only*** way to satisfy the purposeful direction test . . . ." *Id.* at 1071 (emphasis added). More recently, in a case alleging, as here, that part of the defendant's purposeful contacts included marketing over the Internet, the Tenth Circuit stated:

> [In *Shrader v. Biddinger*, 633 F.3d 1235 (10th Cir. 2011)] [w]e noted that "it is necessary to adapt the analysis of personal jurisdiction to this unique circumstance by placing emphasis on the internet user or site intentionally directing his/her/its activity or operation at the forum state rather than just having the activity or operation accessible there." *Id.* at 1240. Accordingly, "[t]he maintenance of a web site does not in and of itself subject the owner or operator to personal jurisdiction, even for actions relating to the site, simply because it can be accessed by residents of the forum state." *Id.* at 1241. Instead, we "look to indications that a defendant deliberately directed its message at an audience in the forum state and intended harm to the plaintiff occurring primarily or particularly in the forum state." *Id.*

*Old Republic Ins. Co.* 877 F.3d at 908.

B. <u>Contacts with Colorado</u>

Other than the allegations that Defendant, a California corporation, (1) knowingly infringed a Colorado corporation's copyrighted works (here, the Infringing Works being a deliberate copy of the Copyrighted Collection), (2) did not discontinue the infringement after being notified by

8

Plaintiff in 2018, and (3) arranged for Amazon.com to direct searches for "Relaximals" to Defendant's products, Plaintiff makes no allegations of *purposeful contact by Defendant toward Colorado* that differs in any respect to purposeful contacts Defendant had in the rest of the United States. All of Plaintiff's allegations concerning Defendant's marketing and sales conduct would apply equally to any state that has Ross, Marshall, TJ Maxx, and HomeGoods stores. Certainly, every state in the union would have equal access to the Internet presence of Defendant and could order goods from Amazon.com. Further, Plaintiff makes no allegation of the relative volume of sales that Defendant made in Colorado versus any other state. Plaintiff pleads no unique, purposeful marketing/sales conduct directed toward Colorado residents other than what Defendant did toward residents of any other state. In this respect, Plaintiff is necessarily relying, at least in part, upon a "stream of commerce" theory in asserting personal jurisdiction over Defendant.

    C.    <u>Stream of Commerce Theory</u>

The stream of commerce theory was first articulated in *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (purposeful availment not only occurs through direct activities in a state, but also when "a corporation . . . delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State."). The theory was modified by a plurality, Justice O'Connor writing, in *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102 (1987), resulting in the "stream of commerce plus" adaptation, which holds that the exercise of personal jurisdiction requires more than the mere act of placing a product in the stream of commerce. *Id.* at 108-113. "The 'substantial connection' between the defendant and the forum State necessary for a finding of minimum contacts must come about by an action of the defendant purposefully directed toward the forum State," and "[t]he placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum

9

State." *Id.* at 112. The four justices in *Asahi Metal Industry Co.* noted that "[a]dditional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." *Id.* Furthermore, a defendant may sufficiently avail itself of a state's market if it were to "create, control, or employ the distribution system" that brings the product to the state. *Id.*

The *Asahi* plurality opinion was then analyzed in another plurality opinion, authored by Justice Kennedy, in *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873 (2011). The Court noted that a "defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum state." *Id.* at 882. The plurality opinion also noted that "a defendant [could] in principle be subject to the jurisdiction of the courts of the United States but not of any particular State." *Id.* at 884. In that case, a defendant's nationwide sales or marketing efforts were not enough to justify New Jersey's exercise of personal jurisdiction; without "conduct purposefully directed at New Jersey," the forum did not have "power to adjudge the rights and liabilities of [the defendant], and its exercise of jurisdiction would violate due process." *Id.* at 886-87.

Although the Tenth Circuit has avoided weighing in on the "stream of commerce plus" theory, courts within the Tenth Circuit have addressed it. For example, in *Fischer v. BMW of N. Am., LLC*, 376 F. Supp. 3d 1178, 1186 (D. Colo. 2019), Chief Judge Philip A. Brimmer applied the theory in dismissing a German company. He noted that the plaintiff there, as here, did not allege that the defendant specifically targeted Colorado with its distribution efforts. He also stated

that the creation of a nationwide distribution system or marketing plan is insufficient, standing alone, to demonstrate minimum contacts with Colorado. *Id.* at 1186 (citing *Nicastro*, 564 U.S. 873; *Lynch v. Olympus Am., Inc.*, No. 18-cv-00512-NYW, 2018 WL 5619327, at *4 n.5 (D. Colo. Oct. 30, 2018)).

On the other hand, in *Advanced Card Techs. LLC v. Harvard Label Inc.*, No. CIV-07-1269-D, 2008 WL 4534117 (W.D. Okla. 2008), under facts similar to those here, the court found specific personal jurisdiction even under a stream of commerce plus theory. The court stated:

> . . . Defendant through its distributors placed its accused products in the stream of commerce. Defendant knew the likely destinations of its products were the states served by its distributors and the distribution centers to which Defendant made shipments. . . . As to Walgreens [including in Oklahoma], Defendant's conduct included shipping the cards directly to the retailer's regional distribution centers. The Court thus concludes that Defendant's connection to Oklahoma included an ongoing, intentional relationship through intermediaries with a retailer in the forum (Walgreens) and sales of Defendant's products to customers in Oklahoma. Defendant knew or reasonably could have foreseen that Oklahoma was a termination point of the distribution chain and a point of sale of its products. Thus, Defendant reasonably could have anticipated being sued for patent infringement in Oklahoma. In short, the Court finds that Plaintiff has adequately shown, for purposes of defeating Defendant's dismissal motion, the existence of specific jurisdiction in Oklahoma.

*Id.* at *3. Courts in other circuits are as equally divided on whether these sorts of facts establish specific jurisdiction. *Compare Best Chairs Inc. v. Factory Direct Wholesale, LLC*, 121 F. Supp. 3d 828 (S.D. Ind. 2015) (applying Seventh Circuit precedent and finding jurisdiction under similar facts) *with Wireless Env't, LLC v. HooToo.com, Inc. et al.*, No. 1:15CV1215, 2016 WL 4530617 at *4 (N.D. Ohio Aug. 30, 2016) ("There is no evidence that [defendant] designed nightlights or spotlights for the Ohio market [or] that [it] directed advertising or promotion of the accused products specifically to residents of the State of Ohio. Sales, marketing and advertising conduct aimed, through the services of a third-party like Amazon, to the United States market in general is

11

insufficient to satisfy Due Process requirements under the Sixth Circuit's 'stream of commerce plus' approach.").

Courts around the country appear to be struggling with developing a test for purposeful availment under these circumstances. I will discuss some of those here:

In *One Media IP Ltd. v. S.A.A.R. SrL*, 122 F. Supp. 3d 705 (M.D. Tenn. 2015), a copyright infringement case in the Sixth Circuit, the court adopted a District of Kansas test that considered "(1) the defendant's direction or control over the flow of the product into the forum; (2) the quantity of the defendant's particular product regularly flowing into the forum; and (3) the distinctive features of the forum that connect it with the product in question." *Id.* at 717 (citing *Eaves v. Pirelli Tire*, No. 13-1271-SAC, 2014 WL 1883791 at \*14 (D. Kan. May 12, 2014). The *One Media IP Ltd.* court also stated that if a defendant's website "is interactive to a degree that reveals specifically intended interaction with residents of the state," there may be purposeful availment, but if the website is merely available to all users of the Internet equally and is not directed toward the forum state, this falls short of purposeful availment. *Id.* Regarding the *Eaves* test, the court noted that the defendant did not control the flow of products into the forum state but contracted with a retail website to deliver the products, with users interacting directly with the retail vendor. "[Defendant's] broad intention to target the United States through a third party is not sufficient to establish purposeful availment." *Id.* at 718. As to quantity of sales, they were negligible in *One Media IP Ltd.*, *id.* at 719 ("Finally, [defendant] operates a non-interactive website that is accessible throughout the world. It offers nothing for sale on the website. The website evinces no interactivity directed at Tennessee and provides no support for exercising personal jurisdiction over [defendant].").

On the other hand, in *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465 (5th Cir. 2006), the court found that "placing a product into the stream of commerce, at least where the defendant knows the product will ultimately reach the forum state," does constitute purposeful availment. *Id.* at 470. The Fifth Circuit expressly declined to follow the plurality opinion (the "stream of commerce plus" theory) in *Asahi*, 480 U.S. at 112, but rather adhered to the original theory created by *World-Wide Volkswagen,* 444 U.S. at 298. *Id.* Likewise, in *O'Neal v. Bumbo Int'l Trust*, 16 F. Supp. 3d 952 (S.D. Ind. 2014), the defendant's knowledge and intention that its products were being sold nationwide through retailers, and that some of those retailers were in the forum state, was sufficient to establish purposeful availment. *Id*. at 958-59. Finally, in *Polar Electro Oy v. Suunto Oy*, 829 F.3d 1343 (Fed. Cir. 2016), the Federal Circuit found that under either the stream of commerce theory or its "plus" iteration announced in the plurality decisions of *Asahi* and *Nicastro*, purposefully shipping products to forum retailers, "fully expecting that its products would then be sold in [the forum] as a result of its activities," means the defendant's actions are purposefully directed to the forum state, "indicating an intent and purpose to serve not only the U.S. market generally, but also the [forum state] market specifically." *Id.* at 1350.

Although the Tenth Circuit has not clearly adopted a black letter rule, the court in *Cagle v. Rexon Indus. Corp., Ltd.*, No. CIV-18-1209-R, 2019 WL 1960360 (W.D. Okla. May 2, 2019), gleaned what it could from the Circuit's decisions and canvassed sister district court opinions struggling to apply the stream of commerce theory. "[W]hile the Tenth Circuit 'has yet to interpret the conflicting opinions of *Asahi* and *Nicastro* to determine the proper framework for a stream-of-commerce analysis,' district courts in this circuit have held that 'something more' than merely placing a product into the stream of commerce is required to establish minimum contacts for jurisdictional purposes." *Id.* at *8 (citing *Fischer*, 2019 WL 1331978 at *4). How much "more"

is the issue. In *Cagle*, although the court dismissed the defendant for lack of personal jurisdiction, of significance was the fact that the product in question was a saw that was produced in Taiwan and delivered to Sears, Roebuck and Co. ("Sears"), and it was Sears, not the defendant, that determined where to sell it in the United States. Had that case involved knowing distribution through established retail stores that the defendant knew would make sales in Colorado, or had it involved direct deliveries to Colorado consumers through a site such as Amazon.com (as alleged in the FAC here), I believe the outcome would have been different.

One critical factor in this case is Defendant's use of the Internet. Such use does not itself create personal jurisdiction. "Consistent with the thrust of the *Calder*-derived analysis for specific jurisdiction in the internet context discussed above, in considering what 'more' could create personal jurisdiction for such activities, courts look to indications that a defendant deliberately directed its message at an audience in the forum state and intended harm to the plaintiff occurring primarily or particularly in the forum state." *Shrader v. Biddinger*, 633 F.3d 1235, 1241 (10th Cir. 2011). However, in *Shrader*, the court distinguished its earlier decision in *Silver v. Brown*, 382 F. App'x 723 (10th Cir. 2010), in which the court found "significant" "the defendant's deliberate exploitation of search-engine technology to funnel searches regarding the plaintiff and his business to [defendant's] blog, which warned them about the plaintiff and provided a link to 'reputable' competitors." 633 F.3d at 1241 (citing 382 F. App'x at 725-26 & n.2, 730).

In the present case, the Plaintiff has alleged: "Defendant actively and intentionally advertised the Infringing Works on Amazon.com by paying the retail giant Amazon.com to list its Infringing Works as Sponsored Products when a consumer searched Amazon.com for 'Relaximals.'" Am. Compl. ¶ 23. Unlike here, in *Silver*, the defendant had also deliberately created a blog attacking the forum plaintiff's business; further, the forum state was the center of the

14

defendant's business activities. The defendant knew that the audience for its online activity would inherently include a substantial number of forum residents and businesses. Thus, I believe the use of search-engine technology to funnel searches about the plaintiff to defendant's blog would not have been sufficient *itself* to confer jurisdiction.

The current case, and specifically the allegations in FAC ¶ 23, are not unlike the alleged defamatory statement in *Shrader*. There, the defendant sent an email to his list of customers and also posted it on a traders' forum. The Tenth Circuit, in dicta, stated that had such email gone to some residents of the forum, and had the defendant known that would be the case, this "might have satisfied [plaintiff's] burden on personal jurisdiction." 633 F.3d at 1248. However, in *Shrader* the defendant specifically alleged avoiding sending the email to anyone in the forum state, and the plaintiff produced no evidence that any forum residents received it.

D. <u>Application of Relevant Factors to this Case</u>

As I see the legal landscape, the following activities which are present in this case, each standing alone, are not enough to confer personal jurisdiction: (1) operating an interactive website absent an allegation that Colorado residents were targeted, *see Zvelo, Inc. v. Check Point Software Techs., Ltd.*, 418 F. Supp. 3d 664, 670 (D. Colo. 2019); (2) putting goods into the stream of commerce knowing that some will be sold in Colorado, *see Cagle*, 2019 WL 1960360 at *8; (3) engaging in a nationwide distribution system or marketing plan unless specifically directed at the forum state, *see Old Republic Ins. Co.*, 877 F.3d at 916; *Fischer*, 376 F. Supp. 3d at 1186; *Durango Merch. Servs., LLC v. Flagship Merch. Servs., LLC*, No. 18-cv-3018-WJM-STV, 2019 WL 3205958, at *2 (D. Colo. July 16, 2019); *Nicastro*, 564 U.S. at 885; (4) causing intellectual property harm to a Colorado resident, *Dudnikov*, 514 F.3d at 1077; (5) deliberately exploiting search-engine technology to funnel searches regarding the forum plaintiff's products to defendant's

15

products, *Shrader,* 633 F.3d at 1241 (discussing *Silver*, 382 F. App'x 723); (6) engaging in direct to consumer sales via an Internet platform, *SpaceCo Bus. Sols., Inc. v. Mass Engineered Design, Inc.*, 942 F. Supp. 2d 1148, 1155 (D. Colo. 2013), *aff'd*, 553 F. App'x 1008 (Fed. Cir. 2014); *Agape Flights, Inc. v. Covington Aircraft Engines, Inc.*, 771 F. Supp. 2d 1278, 1288 (E.D. Okla. 2011); and (7) selling to the forum's residents through numerous brick and mortar retail stores, *Fabara v. GoFit, LLC*, 308 F.R.D. 380, 402 (D.N.M. 2015), *as amended* (Aug. 20, 2015).

What I have not found is a case in which all of these elements are present. The cases analyzing these sorts of considerations, which number in the hundreds, all involve some subset of these facts (or perhaps additional jurisdictional facts that are not present in this case). Relevant post-*Nicastro* cases by our circuit court appear to support jurisdiction here. First, the court in *Old Republic Ins. Co.* found of potential significance the existence of direct sales to the forum's residents. 877 F.3d at 909 n.21 ("[T]he facts of the present case take us outside the stream-of-commerce theory because Continental Motors engaged in direct sales of the FBO Program to Colorado customers."). We have such sales alleged here.

Second, concerning knowledge that its products were going to the forum state, in *Monge v. RG Petro-Mach. (Grp.) Co.*, 701 F.3d 598 (10th Cir. 2012), the court held that the heightened requirements of the *Asahi* test were not met because the defendant consigned an oil well repair rig to a company in Kansas, but that company later moved one of the rigs to Oklahoma; thus, the defendant had not expected that the rig would be used in Oklahoma and, thus, had not "purposefully directed actions toward the forum." *Id.* at 620. Here, we have indisputable knowledge by Defendant that it was selling to Colorado residents through numerous platforms.

Finally, concerning Colorado-specific conduct, we have the *Shrader* and *Silver* cases placing importance on manipulation of the Internet to direct searches for a forum plaintiff's

presence to the defendant's own benefit. In this case, we have an allegation of Defendant continuing its utilization of the Colorado market even after it was warned by Plaintiff of its Infringing Products and their purported violation of the Copyrighted Collection, which is unlike the defendant in *Shrader* avoiding contact with the plaintiff's forum.

In sum, although only by the thinnest of margins, I believe under the case law, with all Colorado contacts considered, Plaintiff has established purposeful direction toward or availment of the forum.

## III. Injury Related to Defendant's Forum Contacts

The next inquiry requires that the plaintiff's injuries arise out of the defendant's forum-related activities. Here, the stated injury is Defendant's alleged infringement of the Copyrighted Collection that Plaintiff asserts resulted in damages due to lost sales, which, of course, are manifested by competing sales of the Infringing Works, including those sales in Colorado. In *Tomelleri v. MEDL Mobile, Inc.*, 657 F. App'x 793 (10th Cir. 2016), the court noted that it had "not selected a test to determine when this requirement is met," but it had analyzed two approaches. *Id.* at 796. The first is whether the plaintiff can show the "defendant's forum-related activities were an 'event in the causal chain leading to plaintiff's injury.'" *Id.* (quoting *Dudnikov*, 514 F.3d at 1078. The second is "'whether any of the defendant's contacts with the forum are relevant to the merits of plaintiff's claim.'" *Id.*

Both of these tests are met here. Defendant's sales of the Infringing Works, indisputably including sales in Colorado, are in the causal chain of Plaintiff's alleged injury—damages for lost sales and profits. Further, these sales, as well as the other contacts addressed above, are material to the Plaintiff's claim.

17

## IV. Fair Play and Substantial Justice

The final task for me is to analyze whether the exercise of personal jurisdiction offends "traditional notions of fair play and substantial justice." *ClearOne Commc'ns., Inc.*, 643 F.3d at 764. Is personal jurisdiction over Defendant reasonable in light of the circumstances surrounding this case? *Id.* As noted above, I must consider in this analysis:

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies.

*Id.*

First, the burden on Defendant, a California corporation, would be incrementally greater than litigating the case in that state. However, once the current COVID-19 situation is resolved, one of the two defendants must litigate in a foreign state. "[W]e see no particular burden simply in the travel from Alberta to Oklahoma that may be required as part of this lawsuit. We therefore believe this factor does not weigh in the individual defendants' favor." *Newsome v. Gallacher*, 722 F.3d 1257, 1273 (10th Cir. 2013); *Dudnikov*, 514 F.3d at 1081 (noting that "one side must bear the inconvenience of litigating on the road"); *but see Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1169 (10th Cir. 2011) ("[L]itigating in a U.S. court located 1,200 miles from Toronto is clearly a burden on [defendant].").  This weighs only slightly, if at all, in Defendant's favor.

Second, Colorado "has an interest in providing residents with a convenient forum for redressing grievances." *Dental Dynamics, LLC*, 946 F.3d at 1232; *see also ClearOne Commc'ns, Inc.*, 643 F.3d at 764 ("Utah has a reasonable, if not substantial, interest in the resolution of this dispute, given that ClearOne is a Utah-based corporation."); *OMI Holdings*, 149 F.3d at 1096 ("Although less compelling, a state may also have an interest in adjudicating a dispute between

two non-residents where the defendant's conduct affects forum residents."). This weighs in Plaintiff's favor.

Third, Plaintiff appears to be a small company and, accordingly, has an interest in the convenience of a Colorado forum. This weighs in Plaintiff's favor. *See Goodwin v. Bruggeman-Hatch*, No. 13-cv-02973-REB-MEH, 2014 WL 3882183, at *9 (D. Colo. Aug. 7, 2014) ("The third factor also weighs in Plaintiff's favor. Plaintiff is located in the United States, and therefore litigating here would be more convenient for him.").

Fourth, the interstate judicial system's interest in efficiency probably weighs slightly in Plaintiff's favor. Based on my experience, the case will likely involve the same type and number of witnesses from each party. Further, federal law governs here and can be equally applied in a district court in either forum. However, "because this action is already pending before this court," *Marble Point Energy Ltd v. Majestic Capital Grp., LLC*, No. 2:06-CV-00487 PGC, 2007 WL 9783230, at *2 (D. Utah Oct. 17, 2007), some judicial efficiency will be gained by leaving the case here.

The fifth factor appears neutral, with no apparent fundamental substantive social policies at play here, except perhaps that federal law will govern this dispute.

My analysis of these factors leads me to find that exercising personal jurisdiction over Defendant in this forum would not offend traditional notions of fair play and substantial justice.

## V. Venue Transfer

As noted above, under clear precedent, once I have found personal jurisdiction over Defendant, venue is proper here. In any event, after consideration of the previous section of this Order concerning fair play and substantial justice, I do not see a fundamental difference between the lawsuit occurring in Colorado versus California for venue purposes.

**CONCLUSION**

I find Plaintiff has demonstrated this Court's personal jurisdiction over Defendant. Accordingly, I **deny** Defendant's Motion to Dismiss for Lack of Jurisdiction or Venue Change [filed January 13, 2020; ECF 20].

Dated at Denver, Colorado, this 31st day of March, 2020.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge